**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**

------------------------------------------------×
EDWARD LONGOBARDI, LEIGH JAZTON KENNEDY, and Class members similarly situated,

        *Plaintiffs,*

        *v.*

AMERICAN AIRLINES GROUP INC.,

        *Defendant.*
------------------------------------------------×

**AMENDED CLASS ACTION COMPLAINT**

**4:24-cv-00082-Y**

**JURY REQUESTED**

    Plaintiffs Edward Longobardi and Leigh Jazton Kennedy, by their counsel, Harman Green PC, bring this action individually and on behalf of all other adversely affected flight attendants with disabilities by and through this Amended Complaint against Defendant American Airlines Group Inc. ("Defendant" or "American Airlines").

## PRELIMINARY STATEMENT

1.     This case is about American Airlines' discriminatory policy (hereinafter referred to simply as the "Policy") that negatively affects employees with disabilities in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101–213, ("ADA")

2.     American Airlines' Policy affects all disabled flight attendants because it is a blanket, company-wide policy.

3.     Any flight attendant who needs to take time off work for an ADA qualifying medical reason is subjected to accruing 'absence points,' which are then used to harm the employee, including discipline and/or termination.

4.     Absence points are given to flight attendants regardless of fault, and Defendant employs roughly 25,000 flight attendants.

5.     Plaintiff Longobardi, a gay man with HIV, was discriminated against and removed

1

from work because of his ADA disability.

6. Because of Plaintiff Longobardi's HIV status, he is at a higher risk of complications or death from common illnesses. When Plaintiff Longobardi contracts an illness, he must take time off work to monitor his health.

7. Plaintiff Longobardi's disability required that he take intermittent ADA leaves as a reasonable accommodation.[1]

8. Plaintiff Longobardi required multiple ADA accommodations in 2021, and Defendant was no longer willing to give Plaintiff Longobardi a reasonable accommodation despite being able to. Plaintiff Longobardi was then terminated in violation of the ADA.

9. Plaintiff Kennedy is a woman with disabilities and was flight attendant for Defendant for 30 years.

10. Plaintiff Kennedy has anxiety and chronic back pain.

11. Plaintiff Kennedy was on FMLA leave from 2018-2022 for her anxiety.

12. Plaintiff Kennedy required leave in late 2022 for her chronic back pain.

13. As Plaintiff Kennedy expired her FMLA leave, Defendant used the opportunity to terminate Plaintiff, for accruing too many absence points even though her absences were only related to her disability and could have been easily accommodated.

14. Simply put, if an employee is without FMLA coverage, their disability will not be accommodated.

## JURISDICTION

15. Pursuant to 28 U.S.C. §1331 this Court may properly hear Plaintiffs' claims as they arise under a federal statute.

---

[1] Plaintiff and the Class are not seeking damages under the Family Medical Leave Act ("FMLA") nor are they brining a claim under the FMLA, but Plaintiff did properly qualify for leaves under the FMLA. FMLA approved absences are the only way to avoid accruing absence points, any other leave, such as a qualified ADA leave, will accrue absence points.

16. Plaintiffs timely filed with the Equal Employment Opportunity Commission and Plaintiff Longobardi received a Right to Sue letter. Plaintiff Longobardi then timely filed this lawsuit within 90 days of receipt of the Right to Sue letter. Class Plaintiffs who have not yet filed with the Equal Employment Opportunity Commission may nonetheless do so with class certification and may proceed in this action. Plaintiff Kennedy timely filed a Class Action Equal Employment Opportunity Commission charge, 31A-2024-00095.

## **PARTIES**

17. Plaintiff Longobardi was and is a resident of Texas.

18. Plaintiff Kennedy was and is a resident of Texas.

19. The Members of the Rule 23(b)(2) and Rule 23(b)(3) Class ("Class") are current and former employees of American Airlines who i) have disabilities within the meaning of the ADA, ii) are qualified for employment under the ADA, iii) are subject to American Airlines' illegal Policy regarding absence points, and iv) performed work responsibilities delegated to flight attendants.

20. Defendant has a registered agent at 1209 Orange Street, in the City of Wilmington, County of New Castle, 19801, but conducts business worldwide with a principal place of business at 2400 Aviation Dr, Dallas, TX 75261.

## **JURY DEMAND**

21. Plaintiffs respectfully request a trial by jury.

## **STATEMENT OF FACTS**

22. Plaintiffs both had been employees of Defendant for over two decades.

23. Plaintiffs were well qualified for their positions – evidenced by the fact that they had been employed without issue for decades.

24. Plaintiffs only discipline during their employments were their 'absences' that only occurred because of their disabilities.

3

25. Each Plaintiff was individually harmed by Defendant, not only because Defendant has a pattern and practice of denying accommodations and failing to engage in the interactive process, but because Defendant's employees assigned to monitor and track Plaintiff's accommodation requests wholeheartedly failed to do anything to meaningfully support Plaintiffs.

26. Stated differently, the American Airlines culture of excluding disabled employees permeated the minds and intent of employees assigned to Plaintiffs' disability accommodation requests.

27. Plaintiffs only ever missed work for their qualified disabilities.

28. Defendant treated Plaintiffs' disability absences the same as a no call no show absence.

29. Defendant employs tens of thousands of flight attendants, and always keeps flight attendants on reserve at airports if necessity arises and a flight attendant cannot fly.

30. Plaintiffs' absences did not put Defendant in an 'emergency' and did not create urgency. Plaintiffs' absences were made well in advance of any scheduled departure, and Defendant had sufficient notice to cover any absences.

31. Absences only occurred because of qualified disability needs, but this did not matter to Defendant.

### Plaintiff Longobardi

32. In 2003, Plaintiff Longobardi was furloughed due to a company restructuring, but was brought back in 2004, when he began inquiring as to his rights to medical leave and ADA accommodations.

33. Plaintiff Longobardi began working again in New York City, at LaGuardia International Airport. Thereat, he communicated with Eric Hodgeson, a Base Council Representative, about an accommodation for his HIV.

34. For years, Plaintiff Longobardi was routinely approved for a reasonable

accommodation in the form of intermittent leaves – Defendant also often applied Plaintiff's FMLA availability to these leaves[2] – to account for doctor's meetings and other necessary time off as a result of his disability, HIV.

35. Plaintiff Longobardi's HIV causes his immune system to deteriorate, and he has difficulty fighting infectious diseases.

36. Even the flu and the common cold can cause serious complications for Plaintiff Longobardi.

37. Plaintiff Longobardi, during his tenure with Defendant, had a reasonable accommodation for his HIV in the form of intermittent leaves.

38. When Plaintiff Longobardi would contract an illness, he would be afforded time off to monitor his health.

39. Plaintiff Longobardi would miss flights due to his disability, but was not given 'attendance points.'

40. Attendance points are given to employees if they miss a shift and did not have a qualifying excuse, such as an FMLA designation.

41. Prior to 2021, Plaintiff Longobardi had an annual, recurring reasonable accommodation that allowed him intermittent leaves, and, thus, he never received any attendance points for missed work because of his doctor appointments related to his HIV.

42. Years later, in 2021, Plaintiff Longobardi was working in the Dallas area.

43. In March 2021, Plaintiff Longobardi was forced to undergo a hip surgery. Plaintiff Longobardi's surgery was postponed to April 2021 because of concerning blood work.

44. At this time, Plaintiff Longobardi was improperly listed as 'separated' in American Airlines' employment status record systems.

---

[2] Simply because a leave is attributed to the FMLA does not disqualify it from also being a reasonable accommodation.

45. This severely and critically impacted Plaintiff Longobardi's ability to refile for his ADA accommodation.

46. Plaintiff Longobardi, despite being improperly listed as 'separated,' had his FMLA exhausted by American Airlines in the same capacity as if he were an active employee.

47. Plaintiff Longobardi took block FMLA leave during this period and was out of work through August 2, 2021, but returned after.

48. Plaintiff Longobardi's manager during this time, Vicki Roberts, previously, had been the head of leave department.

49. Ms. Roberts had knowledge of Defendant's medical leaves, including for his hip surgery.

50. Going forward, nothing was ever done to accommodate Plaintiff Longobardi's disability.

51. Immediately, Plaintiff Longobardi's fate was sealed, as Defendant never again was willing to discuss any form of time off, even for medical emergencies.

52. Plaintiff sought accommodations in the form of non-FMLA leave and rescheduling of working hours to accommodate his disabilities.

53. Plaintiff Longobardi was given a letter dated August 2, 2021 stating that Plaintiff Longobardi was "absent without authorization since 05/17/2021."

54. This was untrue as Plaintiff Longobardi had requested disability benefits on March 12, 2021 in anticipation of his leave, which was an approved leave.

55. Upon his return, in early August, Plaintiff Longobardi was brought into a meeting on his attendance – a result of his surgery – and immediately an employee named Ursula Ball stated "I remember you from New York," which was where Plaintiff was first granted an accommodation.

56. Plaintiff Longobardi had never met Ms. Ball before.

57. Plaintiff Longobardi was then told that because American Airlines had placed him on a prior medical leave for his hip surgery, all future absences would be counted against him.

58. Further, this meant that Plaintiff Longobardi's HIV could not be accommodated, as any meeting with a doctor would be an 'absence.'

59. Stated differently, Plaintiff Longobardi's accommodation, which provided virtually zero business hardship, which had been routinely approved for decades, had now suddenly vanished because Defendant would not break from the Policy.

60. The Policy, as applied, is completely inflexible and it is impossible for a disabled flight attendant to avoid adverse employment actions because of their disability.

61. From September 7, 2021 to December 31, 2021, Plaintiff Longobardi was given 13 absence points.

62. Plaintiff Longobardi's absences occurred because his disability required he attend a doctor's appointment that prevented him from getting on a particular flight.

63. Flight attendants for Defendant work on 'sequences.'

64. A one day trip may be a sequence and missing that day would count as an absence point.

65. But if, say, a flight sequence ties to another, ie. Sequence 1 is New York to Chicago and Sequence 2 is Chicago to Dallas, missing Sequence 1 would demand the flight attendant miss Sequence 2.

66. Stated differently, a one day absence may result in two or three absence points being applied to a flight attendant's record.

67. Defendant's Policy offered no flexibility to Plaintiff Longobardi, a person with a lifelong disability, the ability to work around his doctor appointments.

68. Further, when Plaintiff Longobardi was on leave, he was stripped of his employment

7

titles and was told that he was unqualified to fly. Defendant then applied absence points to Plaintiff Longobardi while he was in the process of recertifying.

69. Defendant failed to engage the interactive process with Plaintiff Longobardi.

70. Defendant has an arbitrary Policy that disparately and negatively impacts disabled employees.

71. Defendant had accommodated Plaintiff Longobardi for years, but was unwilling to break from its inflexible Policy of only allowing leave as confined to text in an employee handbook.

72. While broadly affecting employees, the Policy as applied to Plaintiff Longobardi was applied in an illegal, directly discriminatory manner.

73. Plaintiff Longobardi required minor, intermittent leave notwithstanding his surgery. This was not a hardship for Defendant, but, rather, was a breach of Defendant's illegal and discriminatory Policy.

74. The Policy does not allow for Defendant to engage in the interactive process.

Plaintiff Kennedy

75. Plaintiff Kennedy had been employed by Defendant from September 1991 through January 31, 2024.

76. It was a shock, then, that Defendant would so blatantly discard her once she became disabled.

77. With the exception of being exposed to toxic uniforms in beginning in 2016, Plaintiff Kennedy's employment saw few incidents as she was a long successful and reliable employee.

78. Plaintiff Kennedy's anxiety actually stems from having to wear the toxic uniforms.

79. From 2018 through 2022, Plaintiff Kennedy was on approved intermittent FMLA leave for anxiety.

80. In 2022, Plaintiff Kennedy informed Defendant of her chronic back pain, which was a result of the wear and tear she experienced from years of working in a physically demanding roles as a flight attendant – such as being thrown around in turbulence and pushing heavy bags overhead.

81. On August 30, 2022, Plaintiff Kennedy went on an FMLA approved leave related to her anxiety, for which she received a letter, dated September 9, 2022, telling her that her leave was a 'burden' on fellow employees and may result in termination.

82. Plaintiff Kennedy filed an ethics report complaining about the letter as discriminatory and harassing.

83. Plaintiff Kennedy then expired her FMLA leave and required a leave to care for her back pain.

84. Despite this, and despite requesting and being approved for a leave of absence, Defendant, did not at any time, inquire into Plaintiff's medical condition and did not engage the interactive process.

85. Instead, Defendant simply put Plaintiff Kennedy on her leave and began assigning absence points to her.

86. Defendant did this to keep Plaintiff out the door, while simultaneously creating a basis to keep her out.

87. Defendant assigned Plaintiff Kennedy absence points because she had been denied any form of leave without penalty November 29, 2022 through January 2, 2023.

88. Plaintiff Kennedy returned to work while attending physical therapy. When Plaintiff returned, she was fully capable of working her job responsibilities, including maneuvering bags up to fifty pounds, but Defendant allowed customers to store bags in overhead bins in excess of 50 pounds, which conflicted with Plaintiff's back disability.

89. Plaintiff Kennedy was denied FMLA because she did not fly enough hours in 2022 to qualify for FMLA eligibility in 2023, and Defendant began the process of retroactively assigning absence points.

90. Plaintiff Kennedy was offered no 'look back' to restore any missed time.

91. Plaintiff Kennedy then accumulated absence points for her anxiety and back pains throughout 2023 - disabilities that she was previously accommodated for through intermittent FMLA leave.

92. Because Defendant did not apply FMLA to Plaintiff Kennedy, Defendant refused to consider any disability accommodations.

93. On September 30, 2023, Plaintiff Kennedy was told that effective September 16, 2023, she was placed on a 'final warning' for her absences as a result of her anxiety and her chronic back pain.

94. Plaintiff Kennedy later given a letter saying that her final warning was effective September 21, 2023.

95. Plaintiff Kennedy was then withheld from work on October 6, 2023, further eliminating the possibility of becoming re-eligible for FMLA leave in the future.

96. On December 28, 2023, Plaintiff was given a letter stating that she had accumulated three more absence points as a result of her disabilities.

97. Through November 2023, Plaintiff Kennedy had repeatedly complained about overhead bins. Specifically, Plaintiff Kennedy complained that bags were too heavy for the bins and having her move the excessive weight was negatively impacting her disabilities.

98. Still, Defendant refused to engage the interactive process because Plaintiff Kennedy was not FMLA eligible and, therefore, not worthy of having her disabilities considered.

99. In January 2024, Plaintiff was given a new attendance manager, Amanda Tamagni,

who continued to implement Defendant's policy of ostracizing disabled employees.

100. Ms. Tamagni refused to accommodate Plaintiff and refused to engage the interactive process over her disability needs.

101. Plaintiff Kenedy complained to Defendant through 2023 that her back was injured and that she required an accommodation to support her.

102. Pushing the heavy bags overhead was, at times, too stressful for Plaintiff Kennedy's back.

103. Defendant refused to accommodate Plaintiff Kennedy, telling her, instead, in December 2023, that she should ask passengers to push the bags for her.

104. Plaintiff also sought accommodations in the form of not being assigned absence points when she had to miss work because of her disability.

105. Defendant refused to explore any avenue that kept Plaintiff Kennedy employed despite Plaintiff Kennedy repeatedly notifying Defendant about her disability and the need for an accommodation.

106. Rather, Defendant saw an opportunity to terminate Plaintiff Kennedy, a disabled employee, because of her disability.

107. Plaintiff Kennedy was terminated effective January 31, 2024 because she was disabled and because she complained about being disabled.

108. Plaintiff Kennedy kept video diaries of her disabilities and ailments, and showed them to Ms. Tamagni the meeting before she was terminated.

109. Defendant's employees, including Ms. Tamagni, sought to terminate Plaintiff Kennedy, a long term, qualified employee, because she was disabled. Defendant's employees did not want to discuss Plaintiff Kennedy's disabilities, did not want to accommodate her needs for brief leaves of absence to manage her disabilities, and, ultimately, retaliated against her when she

complained about their failure to accommodate her.

110. Plaintiff Kennedy was a thirty year veteran for Defendant, and being discarded in such a hostile, discriminatory, and offensive manner will have lasting effects on her physiological and emotional state.

## Class Allegations

111. Plaintiffs bring this action on behalf of themselves and all other disabled flight attendants at American Airlines.

112. Defendant's Policy is applied to all flight attendants.

113. Defendant's Policy arbitrarily and illegally impacts employees with intermittent disabilities, such as HIV, anxiety, or ulcerative colitis.

114. Regardless of location, tenure, or disability, these differences do not matter for the purposes of determining Class entitlement to protections under the ADA.

115. Plaintiff Longobardi had been working with HIV for Defendant for decades.

116. As soon as Plaintiff Longobardi went on leave for a hip surgery, the accommodation for HIV that Plaintiff Longobardi had for decades was suddenly revoked.

117. When employees take medical leave and, subsequently, are on additional medical leaves, for a disability, they are given absence points.

118. Absence points are given even with qualifying excuses as the Policy is a 'no fault' policy in applying points.

119. Defendant's Policy is a cycle that punishes disabled employees who need to take medical leaves.

120. This treatment happens to all disabled flight attendants who need time off work, which violates the Policy.[3]

---

[3] The only way to avoid absence points is via an approved FMLA leave. All other instances of an absence will incur an absence point.

121. Plaintiffs' claims are one and the same as those of the Class and their interests are aligned with and will not hinder the Class.

122. Plaintiff Longobardi had intermittent FMLA for HIV. Plaintiff Kennedy had intermittent leave for anxiety. Both Plaintiffs expired their FMLA eligibility because of second disabilities and, at that point, Defendant refused to accommodate them, and, instead, terminated them.

123. Class treatment is necessary for Plaintiffs' claims lest federal Courts around the Country will be flooded with similar cases, which leads to judicial backlog and inconsistent results.

124. The questions of law and fact that are common to all Class members greatly overshadow any differences or disputes.

125. Class treatment is not only superior but necessary in this action.

## CAUSES OF ACTION
## FIRST CLAIM

**Disability Discrimination, on behalf of Plaintiffs and those similarly situated, evidenced by pattern and practice of failing to accommodate disabilities**

126. Plaintiffs and the Class hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 125 with the same force as though separately alleged herein.

127. Under the Americans with Disabilities Act, it is illegal to treat employees differently because of their disability status.

128. At all times, Plaintiffs and the Class were employees under the meaning of the ADA.

129. Defendant has a discriminatory Policy that arbitrarily applies absence points to disabled employees and causes a disparate impact.

130. Plaintiff Longobardi was targeted because of his disability, being HIV positive, because it required sporadic leaves of absence

131. The same is true of Plaintiff Kennedy, who had sporadic leaves based on her anxiety, a qualified disability under the law.

132. Defendant's employees tasked to monitor and track Plaintiffs' leaves either did not want to, or were instructed not to, approve any accommodations and, instead, applied absence points to qualified accommodation requests and leaves related to Plaintiffs'' disabilities.

133. Plaintiffs maximized their FMLA usage and Defendant refused to apply any accommodation that was outside of the FMLA rubric.

134. The obligations under the Americans with Disabilities Act are not abbreviated or relieved by the Family Medical Leave Act.

135. Regardless of whether an employee can utilize FMLA leave, employees are protected under the Americans with Disabilities Act.

136. Under the Americans with Disabilities Act, each Plaintiff, and each Class Member, was and is entitled to a personalized accommodation approach, absent substantial financial hardship, when a qualified employee is disabled.

137. Plaintiffs were qualified, disabled employees. Defendant did not accommodate them.

138. Plaintiffs were qualified employees, but only requires that they be granted penalty free leaves to manage their disabilities. Plaintiffs were fully capable, and remain fully capable, of performing their major job responsibilities.

139. Accordingly, Plaintiffs and the Class seek their wages, back pay, front pay, emotional distress damages, punitive damages, attorneys fees, costs, expenses, and any and all other remedies available under the law.

## SECOND CLAIM

**Failure to engage the interactive process, on behalf of Plaintiff and those similarly situated**

140. Plaintiffs and the Class hereby reallege and incorporate each and every allegation contained in paragraphs 1 through 125 with the same force as though separately alleged herein.

141. Under the Americans with Disabilities Act, Defendant has a duty to engage the interactive process.

142. At all times, Plaintiffs and the Class were employees under the meaning of the ADA.

143. Plaintiffs each have a qualifying disability under the Americans with Disabilities Act.

144. Members of the Class have a qualifying disability under the Americans with Disabilities Act.

145. In 2021, Plaintiff Longobardi was forced to take a leave because of a surgery.

146. At the end of 2021, Plaintiff Longobardi sought an accommodation in the form of intermittent leaves as necessary.

147. Instead of engaging in any interactive process, Defendant prohibited Plaintiff Longobardi from continuing his employment.

148. The same is true of Plaintiff Kennedy.

149. Plaintiff Kennedy was approved for FMLA leaves related to her anxiety, for years, but when she garnered a separate disability, it became too much for Defendant and Defendant simply began to ignore Plaintiff Kennedy and assigned her absence points as a means to oust her from her employment.

150. At no point did Defendant engage the interactive process related to Plaintiff Kennedy's back disability and simply ignored her requests for an accommodation.

151. Defendant's Policy is per se illegal as it fails to engage in the interactive process.

152. Specifically, Defendant does not address the cost-detriment of allowing a particular flight attendant time off work.

153. Instead, any disabled flight attendant is given an attendance point if they miss a shift due to their disability.

154. The only time an absence point is not given, is if the flight attendant is granted an FMLA leave.

155. Simply applying the FMLA or saddling a flight attendant with an absence point is not sufficient to engage the interactive process under the ADA.

156. Defendant levied absence points onto Plaintiffs when they could have otherwise had their disabilities accommodated, and did not engage the interactive process regarding their disabilities.

157. Defendant consistently does this to employees, ie. members of the Class, who have disabilities.

158. Class members were not and are not given a fair assessment of their need for a reasonable accommodation and, thus, Defendant failed to engage in the interactive process as to the Class.

159. Accordingly, Plaintiffs and the Class seek their wages, back pay, front pay, emotional distress damages, punitive damages, attorneys fees, costs, expenses, and any and all other remedies available under the law.

## THIRD CLAIM

### Retaliation against Plaintiff Kennedy

160. Plaintiffs Kennedy hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 125 with the same force as though separately alleged herein.

161. Under the Americans with Disabilities Act, it is illegal to treat employees differently because of their disability status.

162. It is also illegal to retaliate against an employee when they bring a good faith complaint of discrimination.

163. Plaintiff Kennedy was not accommodated and Defendant did not even engage in the interactive process when Plaintiff sought an accommodation.

164. Plaintiff complained that she was not being accommodated.

165. When Plaintiff Kennedy complained, she was dismissed and told to have passengers help her.

166. Shortly after she complained, Planitiff Kennedy was terminated.

167. Plaintiff Kennedy was terminated because she was seen as a 'problematic' employee for demanding her right to an accommodation.

168. Accordingly, Plaintiff Kennedy seek her wages, back pay, front pay, emotional distress damages, punitive damages, attorneys fees, costs, expenses, and any and all other remedies available under the law.

**REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff and the Class respectfully request the following relief:

A. For the first cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements;

B. For the second cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements;

C. For the third cause of action, damages for wages and emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements; and

D. For such other and further relief as the Court deems just and proper.


Dated: Dallas, Texas
July 5, 2024

          **HARMAN GREEN PC**

By: *(signature)*
          Walker G. Harman, Jr.
          824 Exposition Ave.,
          Suite 8
          Dallas, Texas 75226
          (646) 248-2288
          wharman@theharmanfirm.com
          *Attorney for Plaintiff*